Paul Farah
P.O. Box 540
Los Altos, CA 94023
Telephone: (408) 921-7736
E-mail:     pfarah@garlic.com

Plaintiff – Appellant Pro Se

Michael G. Cross
mgc@severson.com
Jan T. Chilton
jtc@severson.com
Severson & Werson
One Embarcadero Center, Suite 200
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants - Appellees

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAUL FARAH,<br><br>        Plaintiff - Appellant,<br><br> v.<br><br>WELLS FARGO HOME MORTGAGE,<br><br>US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BEAR STEARNS ARM TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES2005-10; and DOES 1 to 10,<br><br>Inclusive,<br><br>  Defendants – Appellees. | **No. 14-15357**<br>D.C. No. 5:13-cv-01127-PSG<br>U.S. District Court for Northern California, San Jose<br><br>**APPEAL FROM DISTRICT COURT DECISION ON COMPLAINT FOR PROPERTY TITLE AND DAMAGES--FRAUD** |

Appellant Brief

TO THE HONORABLE COURT:

Appellant Farah hereby appeals to the United States Court of Appeals for the Ninth Circuit from the final judgment of dismissal with prejudice entered in this

action on the 23rd day of January 2014. This notice is being filed by Farah only and is not on behalf of his spouse.

## QUESTIONS PRSENTED

1. Should there be consequences for Wells Fargo Home Mortgage ("Wells Fargo") when it causes damages to Farah by breaking its commitment (Exhibit B) during a short sale agreement?

2. Are there enough facts to state a claim that is plausible on its face?

3. Did Farah satisfy Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud, notice of the particular misconduct alleged to constitute the fraud charged?

4. Is it lawful for title to property be procured using fraudulent activities in a dual-tracked short sale in an otherwise defect-free foreclosure proceeding?

## STATEMENT OF PARTIES IN INTEREST

The following are interested parties to this case:

A. Robert Tate, co-purchaser of the property, Instrument No. 22369906, with a loan from CitiBank, Instrument No. 22369907.

B. Amy Tate, co-purchaser of the property, Instrument No. 22369906, with a loan from CitiBank, Instrument No. 22369907.

C. CitiBank, loan to purchasers of the property, Istrument No. 22369907.

D. Mortgage Electronic Registration Systems, recorder of the loan, Instrument No. 2236907.

E. Chuck Vargas, Windermere Valley Properties, Buyers Real Estate Broker.

F. Edward Zimbrick, Century 21 Alpha, Sellers Real Estate Broker.

G. Chicago Title Insurance Company, Title Insurance Company handling the transaction, Instrument No. 22369906, 22369907.

# TABLE OF CONTENTS

1.  **STATEMENT OF JURISDICTION** ............................................................5

    A.  Basis For The District Court's Jurisdiction.................................................5

    B.  Basis For the Court of Appeals Jurisdiction ............................................7

    C.  Timeliness of Appeal ..................................................................................7

    D.  Disposition of Parties Claims......................................................................7

2.  **STATEMENT OF ISSUES PRESENTED FOR REVIEW** ........................8

    A.  Fraud Claim Dismissal ................................................................................8

    B.  Unlawful Transfer of Title and Possession of Property ..........................8

3.  **STATEMENT OF FACTS** ..........................................................................9

    A.  Original Deed of Trust ................................................................................9

    B.  Farah 2009 Loan Modification Attempt ....................................................9

    C.  Farah 2011 Short Sale to Mitigate Foreclosure Risk ..............................9

    D.  Short Sale Agreement and Responsibilities of Parties...........................10

    E.  Dual-tracked Foreclosure Process and Farah Risk Mitigation...............10

    F.  Wells Fargo Violated its Short Sales Program to Defraud Farah ..........11

    G.  Wells Fargo Fraudulent Foreclosure Sale ..............................................12

    H.  Wells Fargo Lied to Farah Following the foreclosure sale........ ...........14

    I.  Wells Fargo Preemption of Farah's Foreclosure Risk Mitigation ..........15

    J.  Farah Financial, Health and Family Impact................................. ...........15

    K.  Farah Investigation and Escalation to Rescind the Foreclosure . ...........15

    L.  Wells Fargo and US Bank Illegal Transfer of Lien and Title..... ...........15

    M.  Unlawful Detainer Trial and Decision in State Court................. ...........16

**4.  SUMMARY OF ARGUMENT** ..........................................................**16**

**5.  ARGUMEMT: FRAUD BASED CLAIM**..................................................**16**

    A.  Lack of Communications by Wells Fargo ..............................17

    B.  Wells Fargo's Accountability ................................................17

**6.  ARGUMENT: UNLAWFUL TRANSFER OF TITLE AND POSSESSION OF PROPERTY**....................................................**19**

**7.  RELIEF REQUESTED FROM ORIGINATING COURT** ........................**20**

**8.  RELIEF REQUESTED ON APPEAL** ...........................................**21**

**9.  CONCLUSION**.............................................................................**21**

**EXHIBIT A**

**EXHIBIT B**

**EXHIBIT C**

**EXHIBIT D**

**EXHIBIT E**

# 1. STATEMENT OF JURISDICTION

## A. Basis For The District Court's Jurisdiction

This action arises under the Constitution of the United States and the District Court's jurisdiction per Fed. R. App. P. 28(a)(4)(A) is as described below:

1. INTRA-DISTRICT JURISDICTION:  This Complaint was assigned to Magistrate Judge Paul S. Grewal, pursuant to Civil L.R. 3-2(c), as it was related to a case previously removed to the District Court, Case No. 5:13-CV-00364-PSG and subsequently remanded to the State Court, Case No. 512CV0071564.

2. STANDING:  Farah has a strong interest in this case and has suffered from the actions of Wells Fargo and US Bank.

3. CONSTITUTIONAL POWER:  In Article III, Section 2 of the Constitution, judicial power extends to nine classes of cases and controversies, which fall into two general groups.  In the words of Chief Justice Marshall in Cohens v. Virginia: 6 Wheat. (19 U.S.) 264 (1821) "In the first, jurisdiction depends on the character of the cause, whoever may be the parties.  This class comprehends 'all cases in law and equity arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority.'  Judicial power is capable of acting only when the subject is submitted in a case and a case arises only when a party asserts his rights 'in a form prescribed by law.'  Osborn v. United States Bank, 9 Wheat. (22 U.S.) 738, 819 (1824)."  In cases involving a federal instrumentality (such as a bank of the United States involved in a case) a strong federal interest is present, even if only state law is involved.

4. STATUTORY POWER: Under 28 U.S.C §1331, Congress has vested jurisdiction in the federal courts to adjudicate civil actions "arising under the Constitution, laws or treaties of the United States". The generally accepted test for presence of federal question jurisdiction is whether the complaint establishes that the right to relief depends upon the construction or application of the Constitution or laws of the United States.

5. THE WELL-PLEADED COMPLAINT RULE: Federal Question Jurisdiction extends to those cases in which a Plaintiff's right to relief necessarily depends on a resolution of a substantial question of Federal Law. *Franchise Tax Board*, 463 U.S. 1.27-28(1983) states that "The presence of Federal Question Jurisdiction is governed by the Well-Pleaded Complaint Rule, which provides that the federal question jurisdiction exists when a federal question is presented on the face of the Plaintiff's well-pleaded complaint". The Plaintiff's complaint contains a claim "arising under" the laws of the United States, specifically 42 U.S.C. §1983.

6. JURISDICTIONAL AMOUNT: As set forth in 28 U.S.C §1332, the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The damage suffered by Farah is in excess of $75,000. Dismissal for failure to meet the minimum is justified only if it appears to be a legal certainty that the claim is really less than the jurisdictional amount. The amount in controversy is not determined solely by examining the amount the plaintiff has actually lost or stands to lose, but also by considering the amount the defendant has gained or stands to gain.

**B. Basis For the Court of Appeals Jurisdiction**

Under 28 U.S.C. § 1291, the court of appeals has jurisdiction over "all final decisions of the district courts . . . except where a direct review may be had in the Supreme Court." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373 (1981). A district court's decision is final for purposes of 28 U.S.C. § 1291 "if it (1) is a full adjudication of the issues, and (2) 'clearly evidences the judge's intention that it be the court's final act in the matter.'" Elliott v. White Mountain Apache Tribal Court, 566 F.3d 842, 846 (9th Cir. 2009); Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC, 548 F.3d 738, 747 (9th Cir. 2008); "The purpose of § 1291 is to disallow appeal from any decision which is tentative, informal or incomplete." Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097, 1101 (9th Cir. 1998) (quotation marks and citation omitted).  The District Court entered a judgment of dismissal with prejudice and ordered the clerk to close the file and thereforethe Court of Appeals has jurisdiction over this case per Fed. R. App. P. 28(a)(4)(B).

**C. Timeliness of Appeal**

The judgment by the District Court was entered on Jan 23, 2014 and the Notice of Appeal was timely per Fed. R. App. P. 28(a)(4)(C), as it was filed on February 24, 2014, within 30 days of the judgment, pursuant to Fed. R. App. P. 4(a)(1)(A).

**D. Disposition of Parties Claims**

The District Court entered a judgment of dismissal with prejudice and ordered the clerk to close the file and therefore this appeal is from a final judgment that disposes of all parties' claims per Fed. R. App. P. 28(a)(4)(D).

**2. STATEMENT OF ISSUES PRESENTED FOR REVIEW**

Farah is taking an appeal from the dismissal of the First Cause of Action, Fraud and Non-Disclosure of Material Facts and the Forth Cause of Action, Unlawful Transfer of Title and Possession of the property located at 16224 Paradise Valley Court, Morgan Hill, CA 95037 ("Property").

**A. Fraud Claim Dismissal**: The District Court found that "Farah has not identified a fraudulent misrepresentation made by an employee of Wells Fargo with an affirmative duty to disclose the information. That Farah called Wells Fargo on the eve of the foreclosure of his home and was unable to reach the employee responsible for the potential short sale of his home does not amount to a fraudulent misrepresentation necessary to state a fraud claim pursuant to Rule 9(b).

**B. Unlawful Transfer of Title and Possession of Property:** The District Court found that Farah fails to allege facts upon which relief can be granted and that it does not allege a valid tender or that an exception to the tender rule applies.

**3. STATEMENT OF FACTS**

   **A. Original Deed of Trust**:  Farah and Wells Fargo executed a Deed of Trust, recorded August 5, 2005, in the Santa Clara County Recorder's Office as Instrument No. 18510737, which encumbered the property at 16224 Paradise Valley Court, Morgan Hill, CA 95037, with Farah Family Trust holding title.

   **B. Farah 2009 Loan Modification Attempt**:  Farah was unable to secure a Loan Modification from Wells Fargo in 2009 while experiencing hardship and reduction in income.

   **C. Farah 2011 Short Sale to Mitigate Foreclosure Risk:**  Farah who had invested over $500K in addition to his down-payment, was unsuccessful in selling the house conventionally in 2010 at a price that would just cover the payoff of his mortgage and the second.  As the housing market fell further, Farah decided to short sell the property to avoid further exhaustion of his financial resources and to avoid the negative consequences of a potential foreclosure as opposed to a short sale, as there would be less impact to his credit rating and he could negotiate a payoff on the $311K second with Wells Fargo at a fraction of the amount owed, as it is customary, whereas in a foreclosure the amount owed on the second would result in an equal amount in tax liability and would result in the uncertainty of collection attempts for that amount in the future;  Farah who had discussed his intent to short sell the property with Wells Fargo earlier when he placed his house on the market with a Real Estate Agent ("Agent") who marketed the property, continued to make his mortgage payments for another 2.5 months while he waited for an offer to be secured so he could formalize the Short Sale Agreement with Wells Fargo as he was prepared to continue making payments by using all financial resources available to him including his retirement savings so as to avoid

the risk of exposure to foreclosure in case of difficulty in finding buyers in an uncertain market.

**D. Short Sale Agreement and Responsibilities of Parties**:  As the Short Sale Agreement is based on both parties acting in "good faith", Farah, his family and the Agent expended time, effort and resources in presenting the property to prospective buyers and securing offers in order for Wells Fargo to review and respond to and continued to market the property even after receiving offers in order to mitigate the risk of losing buyers due to the lengthy short sales review and approval process and the offered price not being acceptable to Wells Fargo; Farah and the Agent worked diligently to secure multiple offers from prospective buyers over the course of several months, with a brief attempt at Loan Modification midstream, while the Agent continued to market the property.

**E. Dual-tracked Foreclosure Process and Farah Risk Mitigation**:  As the mortgage became delinquent Wells Fargo initiated the foreclosure proceedings and issued a Notice of Default, with the understanding that the short sale process would continue and Wells Fargo would review and respond to offers while we had buyers and offers in place;  as time went by and Farah lost for various reasons a Notice of Sale was issued, with the expectation that Wells Fargo would postpone scheduled foreclosure sales of the property during its processing of offers submitted.  Farah had a backup plan in place for avoiding potential foreclosure of his property in case of failure to secure buyers or to secure offers that would be accepted by Wells Fargo that he never needed to put in effect as during the successive months there was always an offer in process by Wells Fargo; Farah's plan was to use his retirement savings as a last-resort to save the property by paying the delinquent mortgage owed 5 days prior to the scheduled sale, as required in the State of California in case he needed to

do so in the absence of buyers or acceptable offers; Farah had the funds necessary to do so as he had money in his bank account and his retirement account (Exhibit E); that plan relied on Wells Fargo to play its part in its Short Sale Program and communicate that it had terminated the Short Sale, which they did not do.

**F. Wells Fargo Violated its Short Sales Program to Defraud Farah**:

Wells Fargo committed fraud while Farah and the Agent had secured an offer which was submitted to Wells Fargo for approval, by not communicating critical events to Farah, concealing critical information in its possession when requested to provide, while it provided and disseminated different and conflicting status to Farah and the Agent during the month of May 2012.

Farah received a package of information from Wells Fargo in response to his "Request for Short Sale Review" on February 17, 2012 (Exhibit B); page 2 of this document, second paragraph, states that "*Upon receipt of the above (short sale documentation), Wells Fargo will review your request. Wells Fargo will communicate its decision to you in writing in approximately thirty (30) calendar days from receipt of a complete package....*"; Wells Fargo violated its own Short Sale Program when it terminated the Short Sale processing in early May (as discovered later by Farah) and did not communicate with Farah to inform him that it has done so; Farah did in fact receive a letter from Ms. Gaiter of Wells Fargo, dated the same as that of the Short Sale termination date, with no mention of anything having to do with the Short Sale and instead providing information about a Loan Modification Request that was denied months ago (Exhibit C).

Of note is the fact that during the Short Sale attempts with various buyers, Wells Fargo had previously "withdrawn" a Short Sale Request (Exhibit D) in no uncertain terms by this letter.

**G. Wells Fargo Fraudulent Foreclosure Sale**:  Wells Fargo blindsided Farah with a foreclosure sale on June 1, 2012, while Farah had been waiting for Wells Fargo to respond to an offer that Farah and the Agent had submitted to Wells Fargo in late April.  The Agent discovered in late May that Wells Fargo was not planning to postpone the sale and alerted Farah of her findings.  On May 31, 2012, Farah placed several calls to Wells Fargo to inquire about the offer approval and the postponement of the sale, during which he spoke with multiple Wells Fargo employees.

Farah called Wells Fargo at 3:15 p.m. on May 31, 2012, to speak with Barbara Gaiter, "Home Preservation Specialist" assigned to him, but was unable to find her at her desk; Farah left her a voicemail with his inquiries on the sale postponement and asked her to call him urgently, as it was the day before the scheduled foreclosure sale.

Farah called Wells Fargo back immediately to find someone else to help; Jessica, "Customer Service Representative", handled the call, during which she verified that the short sale offer and sale postponement request were both in process; she indicated that she could not however provide Farah with the status of the sale postponement request, as the only person who is allowed to provide that information is the assigned Home Preservation Specialist, Ms. Barbara Gaiter; she then tried to contact Ms. Gaiter with no success and left her a voicemail and sent her an email to alert her of my call and for her to call me back urgently.

Farah immediately called Ms. Gaiter again, with a short summary of his conversation with Jessica and the urgency to hear back, as she was apparently the sole person who could provide Farah with the information.

Farah who had not heard back from Ms. Gaiter, called her again at 6:40 p.m. on May 31, 2012, but was unable to find her at her desk.

Farah called Wells Fargo back immediately and spoke with Alton, Customer Service Representative, who verified that the short sale offer and sale postponement request were both in process and indicated that he could not however provide Farah with the status of the sale postponement request, as the only person who is allowed to provide that information is the assigned Home Preservation Specialist, Ms. Barbara Gaiter; he then tried to contact Ms. Gaiter with no success and left her a voicemail to alert her to call Farah back urgently.

Farah then escalated the issue of having to wait for a single person to get an answer and requested to speak with a supervisor; Alton's supervisor, Ajay, got on the call and assured Farah of the same information Alton had provided; in addition, Ajay indicated that sale postponements always occurs on the day or night before the scheduled sale and often do not get reflected in their system till past the midnight hour; Ajay then verified that it was still during Ms. Gaiter's work schedule and contacted her by phone with no success and having to leave her a voicemail; he then sent her an email with the same request, to call Farah back as soon as possible.

Farah was never provided with the critical information that he was entitled to have that evening and was instead fooled by Wells Fargo Customer Service Representatives whom he spoke with, who all gave him the runaround and fooled him into thinking that the sale postponement "could" come through and that it was only a matter of time for Ms. Gaiter to call and confirm; unbeknownst to Farah at the time, this act by Jessica, Alton and Ajay was just the cover-up piece of a plan being executed by

Wells Fargo employees, who all conspired to withhold information in order to blindside him with their actions.

Farah believed Wells Fargo who concealed information from him and never received a call until after they had executed on their intended sale the next day.

Farah alleges that on the night of May 31, 2012, since it would have was already too late according to California Law for Farah to pay the delinquencies and save the house, that the reason Jessica, Alton and Ajay misled Farah was that they didn't want Farah to disrupt their plan by filing for bankruptcy the next morning in order to avert the sale; though Farah did not want to file for bankruptcy in general, Wells Fargo did everything they could to stop Farah from learning the truth, which may have resulted in disruption of the sale.

Having confirmed a number of calls having been made on that day to a Wells Fargo telephone number with Verizon Communications, Farah attempted to, but was unable to receive a copy of the Call Detail Recording data from that, since the account is closed; Verizon indicated that a court subpoena is required in order to receive the information, which Farah plans to initiate once the trial is underway.

**H.  Wells Fargo Lied to Farah Following the Foreclosure Sale**:  Farah, who had been blindsided by Wells Fargo, learned that Wells Fargo had actually terminated the processing of the Short Sale in early May, so he contacted Wells Fargo on June 2, 2012 and spoke with Paris, Customer Service Representative, who lied to Farah; Paris said that Wells Fargo Short Sale Department does not always communicate with borrowers when it terminates a Short Sale and then later suggesting that Wells Fargo did in fact send a letter to Farah about the Short Sale being terminated, but

of course she could not provide a copy to Farah and suggested Farah to write to Wells Fargo to receive a copy.

**I. Wells Fargo Preemption of Farah's Foreclosure Risk Mitigation:** While Farah was waiting for Wells Fargo to respond to the offer submitted, as per the risk mitigation strategy, ¶3C, he had secured 2 additional offers, one at a higher price than the offer that was already in process (Exhibit A) and as such he would have been able to manage any risk associated with Wells Fargo not accepting the offer in process due to price – and without having to use any last-resort measures to avoid a foreclosure.

**J. Farah Financial, Health and Family Impact:** Farah's financial hardship and the decision to short sell the property took a toll on his health and as he was preparing to return to work in June 2012 when he suffered a major setback as a direct result of the foreclosure, which intensified and extended his condition.

**K. Farah Investigation and Escalation to Rescind the Foreclosure:** Farah escalated his concerns of fraud to senior staff at Wells Fargo handling foreclosure decisions and provided them with details and records on the next business day after the foreclosure and for several days after, requesting that they rescind the foreclosure; Farah obtained copies of relevant emails, screen-shots of the Online System ("Equator") used between Wells Fargo and the third-party Short Sale Negotiator working on behalf of the Agent; Farah has pieced together the events leading to the foreclosure and the wrongdoings by Wells Fargo based on correspondence and conversations with Wells Fargo and those of the Agent.

**L. Wells Fargo and US Bank Illegal Transfer of Lien and Title:** The property did not sell at the foreclosure sale ("REO") and US Bank perfected the title shortly thereafter.

**M. Unlawful Detainer Trial and Decision in State Court**: US Bank filed an Unlawful Detainer in the State Court against Farah and on March 25, 2013 Farah appeared before Honorable Judge Jerome Nadler, who did not grant Stay of Proceedings while Farah's suit was pending in the Federal Court; US Bank prevailed against Farah and an Order was issued for Farah to vacate the property and pay monetary damages to US Bank.

## 4. SUMMARY OF ARGUMENT

Evidence provided to the District Court shows that injuries to Farah were a direct result of fraud by Wells Fargo during a short sale process when it concealed critical information from Farah in May 2012 and deprived him of his rights under the California Law to prevent the foreclosure sale from going through by paying the delinquent balance off and making the loan current, which he was prepared to do.

## 5. ARGUMEMT: FRAUD BASED CLAIM

The District Court found that "Farah has not identified a fraudulent misrepresentation made by an employee of Wells Fargo with an affirmative duty to disclose the information. That Farah called Wells Fargo on the eve of the foreclosure of his home and was unable to reach the employee responsible for the potential short sale of his home does not amount to a fraudulent misrepresentation necessary to state a fraud claim pursuant to Rule 9(b).

The primary (first) fraudulent activity by Wells Fargo was terminating the short sale without communicating with Farah as agreed (Exhibit B).

The second fraudulent activity was when Farah called Wells Fargo on the eve of the foreclosure, during which Wells Fargo continued to withhold material information from Farah allegedly to reduce its risk by ensuring that Farah would not file for bankruptcy the next day, disrupting their intended sale.

The lack of communications as agreed (Exhibit B) is the primary fraudulent activity that took away Farah's mitigation plan. Hearing the truth

the night before the foreclosure would have made no difference to Farah as it was would have already been too late to payoff the outstanding balance and save the house. Farah had no intention of filing for bankruptcy.

## A. Lack of Communications by Wells Fargo

The District Court does not address the main issue of Wells Fargo not communicating with Farah (Exhibit B) – withholding material information and violating its agreement.

Whether or not the secondary fraud during phone calls the night before qualifies that Farah spoke with a Wells Fargo with an affirmative duty to disclose, the short sale agreement (Exhibit B) obligates Wells Fargo to a duty to disclose as per its primary communications responsibility.

Farah alleges that he has satisfied Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud, notice of the particular misconduct alleged to constitute the fraud charged—the fraud by Wells Fargo when it withheld material information and violating its agreement with Farah.

What is false or misleading about Wells Fargo's actions is that lack of communication caused Farah to lose his house to a foreclosure rather than a short sale, with increased tax and credit risks, which he was protecting himself from all along.

## B. Wells Fargo's Accountability

In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead;

(2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff. (*Warner Constr. Corp. v. City of Los Angeles Supreme Court of California*, *In Bank*.March 31, 19702 Cal.3d 28585 Cal.Rptr. 444.)

The 3 elements of cause of action for non-disclosure of material facts are:

Multiple Wells Fargo staff actively held back information in their possession from Farah, to which he was entitled to; they told Farah that the Short Sales postponement request is in progress, when it could not have been if the Short Sale had already terminated earlier that month.is already terminated, which they should have, so Farah would have a chance to react to and prevent the foreclosure by paying off the delinquencies, as per his right and his plan. Wells Fargo staff made representations about the Short Sale, but did not disclose the fact that the Short Sale is already terminated, which would materially qualify that there is no chance for postponement of the foreclosure because its underlying reason be postponed due to a Short Sale is no longer the picture.

Wells Fargo staff representations without disclosing material facts were maliciously planned to mislead Farah into thinking that a sale postponement was in the cards when in fact it was not; they did so to ensure that Farah would not interrupt Wells Fargo's plan to blindside Farah with the sale.

Wells Fargo staff held back information in their possession from Farah that they knew Farah did not have and was contacting Wells

Fargo to obtain; they also knew that Farah could not possibly obtain this information in any way other than through Wells Fargo.

Wells Fargo and its staff did not communicate the termination of the Short Sale in early May to keep Farah in the dark so they could foreclose on the property as they planned; they then actively held back this crucial information during the course of several conversations between Farah and Wells Fargo staff the day/night before the foreclosure sale; Wells Fargo actively concealed the discovery of this information from Farah.

The rule has long been settled in this state that although one may be under no duty to speak as to a matter, 'if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure.' " (*Rogers v. Warden* (1942) 20 Cal.2d 286, 289, 125 P.2d 7.)

## 6. ARGUMENT: UNLAWFUL TRANSFER OF TITLE AND POSSESSION OF PROPERTY

The District Court found that Farah fails to allege facts upon which relief can be granted and that it does not allege a valid tender or that an exception to the tender rule applies.

The title to property was procured using fraudulent activities in a dual-tracked short sale in an otherwise defect-free foreclosure proceeding.

Farah failing to satisfy the Tender Rule was not due to his own neglect and was instead a product of the fraud by Wells Fargo, as it stole away Farah's option to save the house 5 days prior to the sale date, as per California law.

Farah alleges that his complaint provides sufficient facts and theory of why Wells Fargo behaved the way it did and that Wells Fargo is liable for the misconduct alleged which led to financial and credit damages to Farah.

US Bank then obtained the title unlawfully as a product of fraud, ¶¶3F-H, and its unlawful detainer case and eviction of Farah, ¶3M, have caused damages to Farah.

## 7. RELIEF REQUESTED FROM ORIGINATING COURT

Farah prayed for judgment against defendants as follows:

**A. Rescind of the Foreclosure and Quieting Title**: As loss of property through foreclosure is involuntary and will not give rise to waiver of right to appeal from that judgment, e.g., if property has been foreclosed upon but not yet sold, it may still be possible for court to fashion remedy. Rules App.Proc., Rule 7(b).—Turner v. Mountain Engineering and Const., Inc., 915 P.2d 799, 276 Mont. 55, as amended on denial of rehearing.

As the property did not sell at the foreclosure sale and became bank owned("REO"), Farah is demanding that the foreclosure is rescinded and the title is quieted CC §3399.

**B. Money Damages and Credit File Corrections:** As the property is now being actively marketed and may be sold while this case is pending and no Lis Pendens has been recorded, Farah demands money damages in the amount of $511K from Wells Fargo and $75K from US Bank.

Farah also demanded that Wells Fargo removes any credit references to a foreclosure from his credit history.

**C. Other Relief:** For such other relief as the court deems just and proper.

## 8. RELIEF REQUESTED ON APPEAL

Wherefore, Farah prays for judgment as follows:

A. Wells Fargo to update credit reporting agencies with changes to reflect a short sale transaction instead of a foreclosure.

B. Wells Fargo to handle any Tax deficiencies that Farah might incur as a direct result of the foreclosure versus a short sale. Farah recently submitted his 2012 tax returns with adjusted-cost-basis which should compensate for the $311K charge-off issued on a 1099-B by Wells Fargo.

C. Wells Fargo to pay Farah $46,000 dollars in damages.

D. US Bank to cause dismissal of the Unlawful Detainer case against Farah.

E. Other Relief: For such other relief as the court deems just and proper.

## 9. CONCLUSION

Appellant *claims* that him and his family were severely distressed in every way as a result of being blindsided by Wells Fargo during the short sale. Having invested over $800k on the property, short sale was the best way to protect their credit; then they got blindsided by the foreclosure.

The *relief* sought is corrective action to undo what was wrongfully done, as found by this court, that is reasonable and possible to undo. Farah is entitled to such relief as he expected Wells Fargo to uphold its end of the agreement (EXHBIT B).

Appellant has suffered from Wells Fargo's fraud personally and financially and is seeking accountability from Wells Fargo for its actions.

Farah is sympathetic to new occupants living at the property now.

Farah prays that the Appeals Court will hold Wells Fargo Bank and US Bank responsible for the damages they caused him.

DATED: March 2, 2015

By: s/ Paul Farah

     Appellant

**EXHIBIT A**



## CALIFORNIA
## RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 4/10)

Date March 29, 2012

_Ok per Gino via phone (Court)_
_4/8/2012_

("Buyer").

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _16224 Paradise Valley Ct, Morgan Hill, ca 95037_ , situated in
      ▓▓▓▓ , Assessor's Parcel No. _776-26-045_ ▓▓▓ , California, ("Property").
      _Morgan Hill_ , County of _Santa Clara_
   C. **THE PURCHASE PRICE** offered is _One Million_ (Dollars $ _1,000,000.00_ ).
   D. **CLOSE OF ESCROW** shall occur on _____ (date) (or ☒ __30__ **Days** After Acceptance).

2. **AGENCY:**
   A. **DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   C. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _Investment Realty Center_ (Print Firm Name) is the agent
      of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _Keulen Realty!_ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate
      Brokers are not parties to the Agreement between Buyer and Seller.

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder. . . . . . . . . . . . . . . . . . . . . . $ _30,000.00_
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer, ☐ Other _____ within 3 business days after acceptance (or ☐ Other _____ ),
      OR (2) (If checked) ☐ Buyer has given the deposit by personal check of $ _____ ),
      to the agent submitting the offer (or to ☐ _____ . The deposit shall be held
      made payable to _____ . The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder (or ☐ into Broker's trust account) within 3
      business days after Acceptance (or ☐ Other _____ ),
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . . . $ _____
      within _____ Days After Acceptance, or ☐ _____ .
      If a liquidated damages clause is incorporated into this Agreement, Buyer and Seller shall sign a separate
      liquidated damages clause (C.A.R. Form RID) for any increased deposit at the time it is deposited.
   C. **LOAN(S):**
      (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _500,000.00_
          This loan will be conventional financing or, if checked, ☐ FHA, ☐ VA, ☐ Seller (C.A.R. Form SFA),
          ☐ assumed financing (C.A.R. Form PAA), ☐ Other _____ . This loan shall be at a fixed
          rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
          Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount. . . . $ _____
      (2) ☐ **SECOND LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
          This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☐ assumed financing
          (C.A.R. Form PAA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed
          _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
          the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) **FHA/VA:** For any FHA or VA loan specified above, Buyer has 17 (or ☐ _____ ) **Days** After Acceptance
          to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer
          requests Seller to pay for or repair. Seller has no obligation to pay for repairs or satisfy lender requirements
          unless otherwise agreed in writing.
   D. **ADDITIONAL FINANCING TERMS:** _____ _470,000.00_
   E. **BALANCE OF PURCHASE PRICE OR DOWN PAYMENT:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      to be deposited with Escrow Holder within sufficient time to close escrow. . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,000,000.00_
   F. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,000,000.00_

Buyer's Initials ( X _____ ) ( _____ )    Seller's Initials ( _____ ) ( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

**RPA-CA REVISED 4/10 (PAGE 1 OF 8)**

## CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)

| Agent: Patrick Keulen | Phone: (408)223-2462 | Fax: (408)223-2622 | Prepared using zipForm® software |
| --- | --- | --- | --- |
| Broker: Keulen Realty! 6276 Skywalker Dr San Jose, CA 95135 | | | |

_Case No. 5:13-CV-01127-PSG_



**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 4/10)

CALIFORNIA
ASSOCIATION
OF REALTORS®

Date _May 8, 2012_

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ ("Buyer").
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _16224 Paradise Valley Ct. Morgan Hill   CA_ , situated in
      _____ , Assessor's Parcel No. _____ , County of _Santa Clara_ , California, ("Property").
      _Morgan Hill_
   C. **THE PURCHASE PRICE** offered is _One Million, One Hundred Thousand_
      _____ (Dollars $ _1,100,000.00_ ).
   D. **CLOSE OF ESCROW** shall occur on _____ (date) (or ☒ __40__ Days After Acceptance).

2. **AGENCY:**
   A. **DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   C. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _____ (Print Firm Name) is the agent
      of (check one): ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _Hun Realty Inc_ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _5,000.00_
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer, ☐ Other
          _____ within 3 business days after acceptance (or ☐ Other _____ );
      OR (2) (If checked) ☒ Buyer has given the deposit by personal check (or ☐ _____ )
          to the agent submitting the offer (or to ☐ _____ )
          made payable to _Title Co._ . The deposit shall be held
          uncashed until Acceptance and then deposited with Escrow Holder (or ☐ into Broker's trust account) within 3
          business days after Acceptance (or ☐ Other _____ ).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . . . $ _30,000.00_
      within __7__ Days After Acceptance, or ☐ _____ .
      If a liquidated damages clause is incorporated into this Agreement, Buyer and Seller shall sign a separate
      liquidated damages clause (C.A.R. Form RID) for any increased deposit at the time it is deposited.
   C. **LOAN(S):**
      (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _825,000.00_
          This loan will be conventional financing or, if checked, ☐ FHA, ☐ VA, ☐ Seller (C.A.R. Form SFA),
          ☐ assumed financing (C.A.R. Form PAA), ☒ Other _Conventional_ . This loan shall be at a fixed
          rate not to exceed _4.500_ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
          Regardless of the type of loan, Buyer shall pay points not to exceed _1.00_ % of the loan amount.
      (2) ☐ **SECOND LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
          This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☐ assumed financing
          (C.A.R. Form PAA). ☐ Other _____ . This loan shall be at a fixed rate not to exceed
          _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
          the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) **FHA/VA:** For any FHA or VA loan specified above, Buyer has 17 (or ☐ _____ ) Days After Acceptance
          to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer
          requests Seller to pay for or repair. Seller has no obligation to pay for repairs or satisfy lender requirements
          unless otherwise agreed in writing.
   D. **ADDITIONAL FINANCING TERMS:** _____
      _____
   E. **BALANCE OF PURCHASE PRICE OR DOWN PAYMENT:** in the amount of . . . . . . . . . . . . . . . . . . $ _240,000.00_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,100,000.00_

Buyer's Initials ( _SS_ ) ( _____ )

Seller's Initials ( _____ ) ( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

**RPA-CA REVISED 4/10 (PAGE 1 OF 8)**

EQUAL HOUSING OPPORTUNITY

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Agent: **Attila Matyas**            Phone: 408.246.5132       Fax: 408.246.6713       Prepared using zipForm® software
Broker: **Hun Realty Inc. 1984 The Alameda, Ste. 4 San Jose, CA 95126**

_Case No. 5:13-cv-01127-PSG_

**EXHIBIT B**



Home Preservation Team
Mac X2303-01N
One Home Campus
Des Moines, IA 50328

February 17, 2012

PAUL FARAH
DEBORAH J. FARAH
16224 PARADISE VALLEY CT
MORGAN HILL CA 95037-9591

RE: **Request for Short Sale Review**
    Account #:   650-650-9033203-XXXX
    Property:    16224 PARADISE VALLEY CT, MORGAN HILL CA 95037
    Buyer(s):    TBD

Dear Borrower(s):

Wells Fargo Bank, N.A. ("Wells Fargo") offers a Short Sale Program to assist borrowers who have experienced a severe financial hardship and can no longer afford to make their monthly loan payments. In this situation, the sale of the property may represent a viable alternative to foreclosure.

A short sale occurs when a property is sold and the net sale proceeds (sales price less the closing costs) are insufficient to pay off the outstanding loan balance (including additional charges) at the time of closing. Since the net sale proceeds are not sufficient to pay the outstanding balance in full, a "shortfall" is created. If Wells Fargo approves a short sale of a borrower's property, the shortfall deficiency (outstanding loan balance including additional charges less the net sale proceeds paid to Wells Fargo) may be forgiven, or the borrower may continue to be obligated to pay the deficiency unless prohibited by state law. Whether your short sale deficiency will be forgiven or not will be specified in the Final Short Sale Approval Letter which sets forth the approved terms of your short sale agreement with Wells Fargo, and which must be signed and agreed to by you.

Enclosed you will find the following materials regarding the short sale process:

- <u>Short Sale Guidelines</u>
  The guidelines detail important information regarding subjects such as: property marketing, workout processing and communication, approval terms and conditions, credit bureau reporting and IRS reporting.

- <u>Home Ownership Counseling Notification and Servicemembers Civil Relief Act Notice</u>
  This notification is being provided to you as required by the United States Department of Housing and Urban Development.

- <u>Lender's Terms and Conditions for Approval Consideration</u>

- <u>Workout Document Checklist to be Supplied by Borrowers</u>
  This checklist itemizes the financial information required from all borrowers who are legally obligated to repay the loan.

- <u>Sale Document Checklist to be Supplied by the Listing Realtor</u>
  The checklist itemizes the property marketing and sale information required from the listing realtor.

- <u>Financial Statement Form</u>
  This form must be completed by all borrowers who are legally obligated to repay the loan.

- <u>Third Party Authorization Form</u>
  This authorization form allows Wells Fargo Bank, N.A. to discuss specific details of your Account with a designated third party. The main form of communication will be by telephone, however Wells Fargo may be able to utilize email in certain circumstances to more efficiently process your file if the borrower(s) authorize this.

Page 2
Account # 650-650-9033203-XXXX
February 17, 2012

The above information should be forwarded to the following address no later than fourteen (14) days from the date of this letter:

**Wells Fargo Bank, N.A.**
**Home Equity Solutions**
**Mac P6050-015**
**18700 NW Walker Road # 92**
**Portland, OR 97006-1971**
**Phone: 1-866-623-1022**
**Fax: 1-866-834-7648**

Upon receipt of the above, Wells Fargo will review your request. Wells Fargo will communicate its decision to you in writing approximately thirty (30) calendar days from receipt of a <u>complete</u> package. If incomplete information is received, the review process will be delayed. It is the <u>borrower's responsibility</u> to submit all information in a timely manner if a closing is to occur as scheduled.

Communication regarding the processing status and decision will be restricted to the borrower or his/her attorney or authorized representative. The borrower is responsible for informing the listing realtor of Wells Fargo's processing status and decision. The listing realtor is responsible for informing the selling realtor and buyer of Wells Fargo's processing status and decision.

Should you need assistance with creating an affordable budget and/or negotiating with other creditors, you may call HUD at 1-800-569-4287 or the National Foundation for Consumer Credit at 1-800-388-2227 for the name of a local agency which may be able to assist you.

Should you have any further questions, please feel free to contact us at the phone number listed below.

Sincerely,

Sean Flynn
Liquidation Servicing
1-866-623-1022 ext. 80510

The laws of some states require us to inform you that this communication is an attempt to collect a debt and that any information obtained will be used for that purpose.

*Notice: The Mortgage, Deed of Trust, Security Deed or other security instrument (the "Security Instrument") that you gave to secure your Wells Fargo account referred to above (your "Account"), authorizes Wells Fargo to protect its interest in the property you pledged as collateral or to protect the validity and/or priority of the lien created by the Security Instrument, by paying certain amounts on your behalf if you fail to perform the covenants and agreements contained in the Security Instrument. These amounts may include, but are not limited to, delinquent real estate taxes, tax verification fees, property valuations and appraisals, title verification fees, property preservation expenses, sums secured by a lien which has priority over the Security Instrument, reasonable attorney's fees and court costs. Any amounts so disbursed by Wells Fargo will become additional debt owed by you and will be secured by the Security Instrument. These amounts will bear interest at the rate applicable to your Account. Please refer to the Security Instrument for additional information. If you have any questions about the amounts that may be charged to your Account, or if you would like to discuss this Notice with a Wells Fargo representative, please call us at 1-866-623-1022.*

Page 3
Account # 650-650-9033203-XXXX
February 17, 2012

## SHORT SALE GUIDELINES

A short sale occurs when a property is sold and the net sale proceeds (sales price less the closing costs) are insufficient to pay off the outstanding loan balance (including additional charges) at the time of closing. Since the net sale proceeds are not sufficient to pay the outstanding balance in full, a "shortfall" is created. If Wells Fargo approves a short sale of a borrower's property, the shortfall deficiency (outstanding loan balance including additional charges less the net sale proceeds paid to Wells Fargo) may be forgiven, or the borrower may continue to be obligated to pay the deficiency unless prohibited by state law. Whether your short sale deficiency will be forgiven or not will be specified in the Final Short Sale Approval Letter which sets forth the approved terms of your short sale agreement with Wells Fargo, and which must be signed and agreed to by you.

## PROPERTY MARKETING:

- The property should be formally listed with a licensed real estate agent by signing a Listing Agreement. The selected listing realtor should have a sales territory that includes the subject property.

- The listing realtor should hold a valid state license and be a member of the local Board of Realtors. The listing realtor should list the property with the local MLS (Multiple Listing Service) to ensure that the property has fair exposure to all potential buyers.

- The Listing Agreement or Addenda should include the following clause:

  "Seller may cancel this agreement prior to the ending date of the listing period without advance notice to the broker, and without payment of a commission or any other consideration, if the property is conveyed to the holder/mortgagee/beneficiary of the mortgage or deed of trust (hereafter the terms "mortgage" and "deeds trust" are referred to collectively as "Mortgage"), or to the Mortgage insurer."

- Any Sales Contracts entered into should state that the Sales Contract is contingent upon written approval of Wells Fargo. The Sales Contract <u>must</u> include the following two (2) clauses:

  "The Seller's obligation to perform on this contract is subject to the rights of the Mortgage insurer (if any) and the Mortgage holder to the conveyance of the property."

  "The sale of the property is contingent upon the Mortgage insurer's if applicable) and Mortgage holder's approval of the sale. The property is to be sold in "AS IS" condition."

- Any Sales Contract entered into should allow for a minimum of forty-five (45) days from the date of contract acceptance by all parties (buyers and sellers) to closing.

- Wells Fargo is not a party to the Sales Contract or the seller in the transaction.

- The borrower must contact all subordinate lien/Mortgage holders prior to closing to secure release of the liens.

## PROCESSING:

- If the loan is in default, standard collection activities will continue to progress, including foreclosure proceedings. A delay of a foreclosure sale will be approved only on an exception basis. Approval of a delay will require evidence that all sales contract conditions and contingencies have been met other than the closing date. In no case will a delay of greater than thirty (30) days be approved.

- If you have a line of credit account that allows you to obtain additional credit advances (instead of a closed-end loan account), your right to obtain additional credit advances will be terminated as part of the short sale agreement between you and Wells Fargo.

- The standard processing time for a review of a short sale request is thirty (30) calendar days from the days of receipt of a complete financial package. A complete financial package includes all documents requested from the borrower and the listing realtor.

- Wells Fargo requires complete financial information from all borrowers who are legally obligated to repay the loan unless they have been expressly released from liability by Wells Fargo.

Page 4
Account # 650-650-9033203-XXXX
February 17, 2012

- Wells Fargo reserves the right to request additional documentation as may be necessary to verify a debt or a change in the borrower's financial situation and/or a hardship. Documentation may include written authorization from the borrower, enabling Wells Faro to obtain information from another creditor about the borrower's obligation to the creditor, or re-verification of the borrower's financial status at the time of loan origination. A hardship is an event or series of events which were beyond the borrower's control, and resulted in a reduction to income and/or an increase in expenses.

- Wells Fargo reserves the right to terminate review of the short sale request if the borrower fails to provide all requested documentation.

- Wells Fargo requires a valuation of the property based on an interior and exterior inspection. Wells Fargo reserves the right to terminate review of the short sale request if the borrower fails to provide Wells Fargo's designated appraiser or realtor with such access to the property as is deemed necessary by Wells Fargo or the designated appraiser or realtor.

**COMMUNICATION:**

- Wells Fargo's communication regarding processing activities and the decision status of a short sale request is limited to the borrower and/or the borrower's attorney or authorized representative. Communication with the borrower's attorney or authorized representative requires that the borrower provide written authorization to Wells Fargo.

- Wells Fargo's communication regarding the borrower's account status, payment history, financial status, and ability to contribute to a shortfall is restricted to the borrower and/or the borrower's attorney or authorized representative.

- Wells Fargo's communication with the listing realtor is restricted to marketing activities on the subject property and the terms and conditions of the Sales Contract. Wells Fargo values the listing realtor's expertise, and relies heavily on the marketing history letter to fairly document the property's market value.

- Wells Fargo's communication with any third party other than the borrower's attorney, or authorized representative or the listing realtor (i.e., buyer or selling agent) is not permitted, unless authorized by the borrower in writing. The listing realtor is responsible for informing the selling realtor and buyer of Wells Fargo's processing status and decision.

Page 5
Account # 650-650-9033203-XXXX
February 17, 2012

**APPROVAL TERMS AND CONDITIONS:**

- Wells Fargo is committed to thoroughly reviewing the borrower's request for a short sale transaction. However, Wells Fargo is under no obligation to approve a short sale.

- Wells Fargo discussions and negotiations do not constitute a short sale approval unless and until a final written agreement has been executed by Wells Fargo.

- Wells Fargo's short sale approval terms and conditions must be accepted by the borrower in writing. If the borrower requests any changes to Wells Fargo's approval terms and conditions, they must be requested in writing. Justification supporting the requested changes must be provided. If not accepted within the designated time frame, the approval becomes null and void.

- The borrower is to net no cash from the sale of the property.

- The borrower(s) is to remain responsible for the maintenance of the subject property until the property is sold, settlement has occurred, and Wells Fargo has released its Mortgage.

- The borrower(s) is to remain responsible for payment of condo, co-op, and/or homeowners association dues/fees until the property is sold, settlement has occurred, and Wells Fargo has released its Mortgage.

**POSSIBLE TAX CONSEQUENCES:**

- If the short sale deficiency is forgiven pursuant to the terms of your Final Short Sale Approval Letter, please consult your tax advisor to determine whether this settlement will constitute income to you and create a subsequent tax obligation.

**CONTACTS FOR ADDITIONAL INFORMATION:**
**Wells Fargo Bank, N.A.**
**Home Equity Solutions**
**Mac P6050-015**
**18700 NW Walker Road # 92**
**Portland, OR 97006-1971**
**Phone: 1-866-623-1022**
**Fax: 1-866-834-7648**

The following notifications are being provided to you as required by the United States Department of Housing and Urban Development.

Homeownership counseling provided by nonprofit organizations experienced in the provision of homeownership counseling and approved by the Secretary of the Department of Housing and Urban Development (HUD) is available. You may obtain a list of HUD approved counseling agencies by calling toll-free 1-800-569-4287 (TDD: 1-800-877-8339).

**Servicemembers Civil Relief
Act Notice Disclosure**

**U.S. Department of Housing
and Urban Development
Office of Housing**

**OMB Approval 2502-0584
Exp 7/31/2012**

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within 9 months after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within 9 months after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemenber's military orders. Please send the notice and military orders to Wells Fargo Bank, Attn: Account Boarding and Modification, MAC B6955-019, 2324 Overland Ave., Billings, MT 59102. Or fax your request to 1-866-359-9068.
- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php
- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the Unites States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

Page 7
Account # 650-650-9033203-XXXX
February 17, 2012

**Notice to Seller/Seller's agent: Please provide a copy of the Lender's Terms and Conditions shown on this page to Buyer/Buyer's Agent**

**Lender's Terms and Conditions for Approval Consideration**

Wells Fargo is committed to thoroughly reviewing the borrower's request for a short sale transaction. However, Wells Fargo is under no obligation to approve a short sale. The following serves as initial notification to the parties involved of the Lender's Terms and Conditions for Approval Consideration:

- The Seller is to net $00.00 (zero) from the sale of the property.

- Property is being sold in an "as is" condition.

- The Buyer and Seller, and/or any agent of the Buyer or Seller, cannot knowingly transact for the sale/purchase of the property for less than its true fair market value, and shall not transact for the sale/purchase of the property to anyone the Buyer, Seller or their respective agents are related to or have a close personal or business relationship with. In legal language, it must be an "arm's length transaction." Any knowing violation of the arm's length transaction requirement without written permission from Wells Fargo may be a violation of federal law.

- Any buyer of the property agrees they will not re-sell the home within 90 calendar days of the closing date

- The Seller or Buyer may not have any agreements to receive a portion of the commission or the sales price after closing

- There are no agreements or understandings between the Seller and the Buyer that the Seller will remain in the property as a tenant or later obtain title or ownership of the property

- There are no other contracts, agreements, or offers known to any of the parties involved relating to the sale or subsequent sale of the property at a higher sales price that have not been disclosed to the Lender

- The value of the Property has not been misrepresented to the Lender, servicer and / or third parties

- Any contributions to the sale from any parties involved, including contributions paid outside of closing, must be disclosed on the HUD-1 Settlement Statement

- Should the Broker(s) involved in the transaction fail to act in good faith in selling this Property or should any involved party engage in misrepresentation; the short sale transaction will be denied or rescinded.

**Please be advised that failure to comply with any of the above conditions or the discovery of acts of misrepresentation related to this transaction may result in the servicer pursuing any and all available legal remedies.**

**Written acknowledgement of compliance with the above terms and conditions will be required of all parties involved prior to the issuance of any Final Approval by the Lender.**

Page 8
Account # 650-650-9033203-XXXX
February 17, 2012

## WORKOUT DOCUMENT CHECKLIST
### (TO BE SUPPLIED BY BORROWER)

**REQUEST FOR ASSISTANCE/HARDSHIP STATEMENT**
- A personal letter which states the reasons for the request. If a hardship has occurred, the borrower(s) should clearly state what the hardship is, when it occurred, and all efforts the borrower(s) has made to remedy the situation. The borrower should clearly state what he/she proposes as a reasonable resolution to his/her situation.

- Evidence of the hardship – death certificate, separation agreement and divorce decree, employment termination notice, pending lawsuit, physician's statement with medical bills, etc.

**FINANCIAL STATEMENT/CASH FLOW**
- A complete Financial Statement form (signed and dated) from all borrowers.

**INCOME**
- Earned income: The two (2) (most recent) pay stubs for all employed borrowers. If a borrower has more than one (1) employer, then pay stubs should be provided from each employer.

- Unearned income: The most recent award/pensions/benefit letter for any borrower who receives unearned income. Unearned income includes: government entitlement programs, Unemployment Income, Social Security, Supplement Security Income, Aid to Dependent Families, Retirement Benefits, Pensions, Veteran's Benefits, Workman's Comp, Trust Income, Disability Benefits, etc.

- Signed copies of your last two (2) filed US Individual Income Tax Returns (1040/1040A) with all W2's, 1099's and Schedules. If a tax return is outstanding and will be filed, copies of the W2's and 1099's should be provided as well as a copy of the Application for Extension.

- Current lease(s) on the subject property if a unit or multiple units are currently rented.

**SELF-EMPLOYMENT INCOME**
- A year-to-date Profit and Loss Statement for the current year.

- Signed copies of your last two (2) filed US Business Tax Returns (1065/1120S/1120) with K1's and all schedules. If a tax return was not filed, a year-to-date Profit and Loss Statement prepared by an accountant should be provided.

**EXPENSES/DEBTS/LIABILITIES**
- A copy of the Note for any subordinate lien (2nd Mortgage or line of credit) on the subject property.

- A copy of the most recent statement for homeowners' association fees/dues and special assessments including statements issued by a cooperative, condominium, or planned unit development association. The statement should indicate the payment status of the fees/dues, required monthly payment, and the total due.

- A copy of the most recent statement for outstanding and/or delinquent real estate taxes.

**ASSETS**
- The three (3) most recent asset statements for all accounts listed on the Financial Statement or Schedule B of your last two (2) filed US Individual Income Tax Returns. Assets include checking accounts, savings accounts, IRA's, money market accounts, certificates of deposit, stocks, etc.

**MORTGAGE ENCUMBERED PROPERTY**
- Written explanation of required property repairs and associated costs with copies of contractors' bids/proposals.

- Copies of applications/claims filed with and written responses from FEMA, the SBA, and/or homeowner's insurance agent if the property has been impacted by a natural disaster: earthquake, flood, hurricane, etc.

Page 9
Account # 650-650-9033203-XXXX
February 17, 2012

### SALE DOCUMENT CHECKLIST
### (TO BE SUPPLIED BY LISTING REALTOR)

**LISTING**
- A copy of all fully executed Listing Agreements and Addenda on the subject property within the prior twelve (12) months.

- An MLS (Multiple Listing Service) printout for the subject property.

- A business card of the listing realtor.

**MARKETING ACTIVITY/VALUE**
- The listing realtor's Broker's Price Opinion (market analysis) with comparable data from three (3) active listings and three (3) closed sales within the prior six (6) months. Proximity/distance of the comparables should be stated. Comparables should be within a 1-mile radius of the property. A STREET VIEW PHOTO OF THE SUBJECT PROPERTY SHOULD BE ATTACHED.

  ▶ The listing realtor's Broker's Price Opinion should state the following:
     a) list price and sales price for a sale within 90 days or less.
     b) list price and sales price for a sale within 90 – 180 days.
     c) number of comparable properties currently listed for sale in the immediate area.
     d) the average marketing time for comparable sales.

- The listing realtor's Marketing Activity Letter should state the following:
     a) details of all marketing activity on the subject property since the initial listing: i.e., advertising, showings, open house, offers with proposed terms, etc. If a previous offer was withdrawn, the reason(s) should be provided.
     b) any unique factors that influence marketability of the property.
     c) reasons for the variance if there is more than a 5% difference between the current list price and the sales price.
     d) adjustments which have been made to the list price as a result of disrepair, vandalism, theft, natural disaster, or property casualty along with an estimate of required repairs, if available. Copies of contractors' bids should be provided.

**SALE**
- A copy of the fully-executed Sales Contract/Purchase Offer on the subject property with all addenda including counter-offers. The property is to be sold in "AS IS" condition. The closing date should be a minimum of 45 days from contract acceptance. A contract will not be considered valid if it has not been accepted by all parties, or if the closing date has expired.

- A copy of the earnest money deposit check made out to the realtor or escrow agent and a receipt for the funds.

- A copy of the buyer's pre-approval, pre-qualification approval, and/or loan commitment letter issued by the Mortgage lender that is subject only to the receipt of a satisfactory appraisal.

- Copies of the buyer's asset statements that verify the cash to close if the sale is an "all cash" transaction.

- A copy of the Escrow Instructions signed by the buyer(s) and seller(s) (California only).

- The name, company, address, phone number, and fax number of the escrow officer/closing agent/attorney.

- The net sheet (estimated settlement statement) which itemize all costs and payoffs including sales commissions, settlement costs, and proposed payoffs of superior liens/deeds of trust.

**EXHIBIT C**

WELLS FARGO HOME MORTGAGE
RETURN MAIL OPERATIONS
PO BOX 10368
DES MOINES IA 50306-0368



05/07/12

ılılıılıllılıılılıılllılıılıılıllılıllılılıllılıılı

1AB        02356/006612/004118 0030   3 AGPFXRHP001 708

PAUL FARAH
DEBORAH J FARAH
16224 PARADISE VALLEY CT
MORGAN HILL, CA  95037-9591

| Account Information | |
| --- | --- |
| **Online:** | yourwellsfargomortgage.com |
| **Fax:** | (866) 278-1179 |
| **Telephone:** | (800) 416-1472 |
| **Correspondence:** | PO Box 10335 |
| | Des Moines, IA 50306 |
| **Hours of Operation:** | Mon - Fri, 8 AM - 11 PM |
| | Sat, 9 AM - 3 PM CT |
| **Loan Number:** | 0055080782 |
| **Property Address:** | 16224 Paradise Valley |
| | Morgan Hill CA 95037 |

Subject: Your request for mortgage payment assistance

Dear Paul Farah & Deborah J Farah:

We're responding to your request for mortgage assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

**Here's what we found**
We carefully reviewed the information you sent us and explored a number of mortgage assistance options. At this time, you do not meet the requirements of the program because:

You did not provide us with all of the information needed within the required time frame.

**Your important next steps**
There may be other mortgage assistance options available to help you avoid a foreclosure sale. Please contact us to learn about the options listed below:

- If the present value of your home is higher than your mortgage balance, you can try to sell your home before the foreclosure sale takes place.
- If your mortgage balance is higher than the present value of your home, you may want to consider what is known as a "short sale". This allows you to sell your home privately for an agreed-upon amount that is less than what you owe on your mortgage. To start the short sale process, it's important for you to work with us in advance to set the selling price.
- The remaining option is a deed in lieu of foreclosure. You can voluntarily deed your property to Wells Fargo, transferring ownership of your home to us.

**What you need to know about foreclosure**
We will continue to work with you to help you avoid a foreclosure sale. However, please understand that a foreclosure sale date for your home is pending and that process moves forward at the same time. Also, as part of the foreclosure process, you may receive notices from a third-party attorney delivered by mail, and see steps being taken to proceed with a foreclosure sale of your home. If you have questions about the foreclosure sale date, please contact your attorney.



WHM30F

HP001 708
006612/004118 AGPFXR S2-ET-M1-C002



050712HP0010003Y

| Account Information | |
|---|---|
| **Loan Number:** | 0055080782 |
| **Property Address:** | 16224 Paradise Valley<br>Morgan Hill CA 95037 |

**Call us now**

We must hear from you. In order for us to help you, it's critical that you contact us immediately to discuss your options. Please call the phone number listed below.

Sincerely,

*Barbara Gaiter*

Barbara Gaiter
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-800-416-1472
Fax: 1-866-590-8910

**Struggling with other expenses? Help is available.**

Sometimes customers have trouble keeping up with their monthly expenses, other than their mortgage payments. If this is happening to you, help is available at no cost from a HUD-approved, non-profit credit counseling agency. Simply call a counselor who will work closely with you to lower your other monthly payments, take your financial circumstances into consideration, and create a budget plan to work for you. To find an agency in your neighborhood, call 1-800-569-4287 or call the HOPE Hotline at 1-888-995-HOPE.

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

The state Rosenthal Fair Debt Collection Practices Act requires that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, TX 77010-9050.

Wells Fargo Home Mortgage cannot dispense tax or legal advice. Please consult a tax advisor and/or attorney regarding any consequences associated with a deed-in-lieu.





| Account Information | |
|---|---|
| **Loan Number:** | 0055080782 |
| **Property Address:** | 16224 Paradise Valley |
| | Morgan Hill CA 95037 |

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N. A. © 2012 Wells Fargo Bank, N. A. All rights reserved. Equal Housing Lender.
NMLSR ID 399801





050712HP0010003Y

HP001 708
006612/004120 AGPFXR S2-ET-M1-C002

*WELLS FARGO HOME MORTGAGE*
*RETURN MAIL OPERATIONS*
*PO BOX 10368*
*DES MOINES IA 50306-0368*



05/09/12

1AB     02354/006610/004112 0030   2 AGPFXRHP014 708

PAUL FARAH
DEBORAH J FARAH
16224 PARADISE VALLEY CT
MORGAN HILL, CA 95037-9591

| Account Information | |
|---|---|
| Online: | wellsfargo.com/ym |
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of Operation: | Mon - Fri, 6 AM -10 PM CT |
| | Sat, 8 AM - 2 PM CT |
| Loan Number: | 0055080782 |
| Property Address: | 16224 Paradise Valley |
| | Morgan Hill CA 95037 |

Subject: Important update about your mortgage assistance

Dear Paul Farah & Deborah J Farah:

As your home preservation specialist, I'm writing to inform you of changes in the status of your mortgage assistance and let you know what to expect going forward. I've been your primary contact, working to help you through the mortgage assistance process. Please understand that, at this time, I am not able to help you find a mortgage assistance solution.

For that reason, the normal collections process will resume if appropriate. This means you will begin receiving phone calls and notices from the Wells Fargo collections department. They will keep you informed of the process and also inquire about any changes in your financial situation.

For any questions please call 1-800-416-1472.

Sincerely,

*Barbara Gaiter*

Barbara Gaiter
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-800-416-1472
Fax: 1-866-590-8910

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

The state Rosenthal Fair Debt Collection Practices Act requires that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at





HP014 708
006610/004112 AGPFXR S2-ET-M1-C002

050912HP01400043

| **Account Information** | |
|---|---|
| **Loan Number:** | 0055080782 |
| **Property Address:** | 16224 Paradise Valley |
| | Morgan Hill CA 95037 |

1-877-FTC-HELP or www.ftc.gov.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N. A. © 2012 Wells Fargo Bank, N. A. All rights reserved. Equal Housing Lender. NMLSR ID 399801





HP014 708
006610/004113 AGPFXR S2-ET-M1-C002

050912HP01400043

**EXHIBIT D**



**WELLS FARGO**

Home Preservation Team
Mac X2303-01N
One Home Campus
Des Moines, IA 50328

March 26, 2012

PAUL FARAH
DEBORAH J. FARAH
16224 PARADISE VALLEY CT
MORGAN HILL CA 95037-9591

RE:     **Short Sale Request**
        Account #:      837-650-9033203-XXXX
        Property:       16224 PARADISE VALLEY CT, MORGAN HILL CA 95037

Dear Borrower(s):

Wells Fargo Bank, N.A. ("Wells Fargo") has received and reviewed your request for a Short Sale. Based on our evaluation of the information submitted to us, your request has been withdrawn for the reasons below:

Reason(s) for Withdraw:
        You did not provide us with all of the requested information needed to review for short sale.

If circumstances change and you would like Wells Fargo to consider a different short sale offer or there are changes to the current offer please notify us and we will review the short sale again. Also, if there is a change in your financial situation please let us know so you can be reviewed for available retention options.

Should you have any questions or need additional information, please feel free to contact us at the number listed below.

Sincerely,
Sean Flynn
**Liquidation Servicing**
866-319-0855 ext. 80510

The laws of some states require us to inform you that this communication is an attempt to collect a debt and that any information obtained will be used for that purpose.

LIQ-50002-20111020

**EXHIBIT E**



**Bank of America** ⋙

FL

0180 P P
E0-3

CD 05/07 1  0000 867 1     934 002411 #001 AT 0.374
PAUL FARAH, SOLE PROP
DBA: FARAH VENTURES
ITF: DEBORAH J FARAH
P O BOX 147
MORGAN HILL  CA  95038-0147

# Your Bank of America Combined Account Statement

**Statement Date: April 30, 2012**

**At Your Service**
Call: 1.800.622.8731

**Written Inquiries**
Bank of America
Morgan Hill Branch
PO Box 37176
San Francisco, CA 94137-0176

Customer since 2012
Bank of America appreciates your business and we enjoy serving you.

Our Online Banking service allows you to check balances, track account activity and more. **With Online Banking you can also view up to 18 months of this statement online.** Enroll at www.bankofamerica.com/smallbusiness.

## ☐ Summary of Your Deposit Accounts

| Account | Account Number | Your Balance |
|---|---|---|
| Business Checking | 01804-71454 | $ 329.00 |
| Bus. Interest Maximizer | * 01803-75127 | 75,038.43 |
| Total Balances | | $ 75,367.43 |

*Combined balances in these accounts may be used to eliminate monthly checking account service charges.

## ☐ Your Business Checking Account

**Account Number: 01804-71454**
Statement Period: March 31 through April 30, 2012

| | | | |
|---|---|---|---|
| Beginning Balance on 03/31/12 | $4,329.00 | Number of electronic checks paid | 0 |
| Total Deposits and Credits | + 10,000.00 | Number of 24 Hour Customer Service Calls | |
| Total Checks, Withdrawals, Transfers, Account Fees | - 14,000.00 | Self-Service | 0 |
| | | Assisted | 0 |
| Ending Balance | $329.00 | | |

## ☐ Important Information About Your Account

Based on the minimum combined balances you've maintained in your linked Bank of America checking and savings accounts, your monthly service charge has been waived.

Remember, by using your Bank of America Small Business Check Card, Bank of America provides you with another way to avoid the monthly maintenance fee on your business checking account.



**Bank of America** 🇺🇸

0180 P P
E0-5

ılıılılıilılılıilılılılılıilılıilılılılıılılıilı
CD 05/07 1  0000 867 1      936 003089 #●01 AT 0.374

PAUL FARAH
ITF: DEBORAH FARAH
PO BOX 147
MORGAN HILL   CA  95038-0147

## Your Bank of America Prima Account Statement

**Statement Date: April 30, 2012**

**At Your Service**
Call: 1.800.622.8731

**Written Inquiries**
Bank of America
Morgan Hill Branch
PO Box 37176
San Francisco, CA 94137-0176

Customer since 2012
Bank of America appreciates your
business and we enjoy serving you.

Our Online Banking service allows you to check balances, track account activity and more. **With Online Banking you can also view up to 18 months of this statement online and even turn off delivery of your paper statement.** Enroll at www.bankofamerica.com.

### ❑ Summary of Your Deposit Accounts

| Account | Account Number | Your Balance |
|---|---|---|
| Prima Interest Checking | 01806-74527 | $ 3,639.52 |
| Cash Maximizer | * 01806-74541 | 1,670.41 |
| **Total Balances** | | **$ 5,309.93** |

*Combined balances in these accounts may be used to eliminate monthly checking account service charges.

### ❑ Your Prima Interest Checking Account
Tiered Interest Checking 1.800.432.1000 - Customer Service

**Account Number: 01806-74527**
Statement Period: March 31 through April 30, 2012

| | |
|---|---|
| Beginning Balance on 03/31/12 | $2,103.69 |
| Total Deposits | + 12,535.00 |
| Total Checks, Withdrawals, Transfers, Account Fees | - 10,974.26 |
| Interest Paid | + .09 |
| Service Charge | - 25.00 |
| Ending Balance | $3,639.52 |

| | |
|---|---|
| Annual Percentage Yield earned this period | 0.05% |
| Interest paid year-to-date | $.50 |
| Number of ATM withdrawals and transfers | 4 |
| Number of purchase transactions | 3 |
| Number of 24 Hour Customer Service Calls | |
| Self-Service | 0 |
| Assisted | 0 |

### ❑ Important Information About Your Account

A monthly service charge was applied to your Prima account because your balance was below the minimum combined balance of $10,000. You can avoid this charge by keeping the required minimum combined balance in this account and the Bank of America savings plans you've linked to it.

Help avoid occasional Overdraft & NSF: Returned Item fees. Set up Alerts to get messages by email or text when your balance is low. Use Overdraft Protection to transfer available funds from linked savings, credit card, or credit line to your checking account to help cover items that would overdraw your account. Call us for details.

Continued on next page                        California

9th Circuit Case Number(s) | 14-15357

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | March 4, 2015 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Paul Farah

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) | s/ Paul Farah